# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

DOUGLAS A. WHEELOCK,

        Plaintiff,

vs.

ANDREW J. NITZSCHKE, et al.,

        Defendants.

No. C23-4053-LTS-MAR

**MEMORANDUM
OPINION AND ORDER**

_____

## *I.    INTRODUCTION*

This case is before me on cross-motions for summary judgment. Defendants Daniel Luesebrink and Woodbury County, Iowa, have filed a motion (Doc. 17) for summary judgment, as have defendants Andrew Nitzschke and Connor Roos. *See* Doc. 19. Plaintiff Douglas Wheelock (Wheelock) has filed a motion (Doc. 18) for partial summary judgment as to liability. Each side has filed a resistance (Docs. 20, 21, 22, 23) and reply (Docs. 24, 25, 26). I find that oral argument is not necessary. *See* Local Rule 7(c).

## *II.    PROCEDURAL HISTORY*

On August 29, 2023, Wheelock commenced an action against defendants in the Iowa District Court for Woodbury County. Doc. 2. On September 21, 2023, defendant removed the case to this court based on federal question jurisdiction under 28 U.S.C. § 1331. *See* Doc. 1. Wheelock asserts a violation of the Fourth Amendment[1] of the United

---

[1] Specifically, Wheelock asserts defendants violated his constitutional rights by searching his residence without a warrant and arresting him when there was no reasonable suspicion or probable cause. *See* Doc. 2 at 7.

States Constitution pursuant to 42 U.S.C. § 1983 against Nitzschke, Roos and Luesebrink (Count I), false arrest (Count II) and abuse of process (Count III) against Luesebrink and respondeat superior against Woodbury County (Count IV).[2]

Defendants have filed answers (Docs. 5, 6) denying the claims and asserting various affirmative defenses including qualified immunity. Trial is scheduled to begin February 3, 2025.

## II.    RELEVANT FACTS[3]

The following facts are undisputed unless noted otherwise. On May 30, 2023, Nitzschke and Roos were employed as officers with the Iowa State Patrol. Luesebrink was employed as an officer with the Woodbury County Sheriff's Department. Doc. 21-1 at 1-2. While on uniform patrol, Nitzschke overheard radio traffic from Woodbury County and the Sioux City Police Department that a reckless driver, possibly impaired, was traveling southbound on Interstate 29 just south of his location. Docs. 19-2 at 1-2; 23-1 at 1. The vehicle came to a stop[4] and a female driver exited the vehicle and began walking in the southbound lane near exit 143.[5] Nitzschke arrived on the scene and was

---

[2] Wheelock sues each defendant in his individual and official capacity. *See* Doc. 2.

[3] Most of the relevant facts come from Luesebrink's body camera, which is the best evidence of what happened. In some instances of contested facts or where the parties have summarized the events in their own words or made certain inferences, I have relied on the dialogue and actions depicted by the video and attempted to describe them as accurately as possible herein. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (explaining where facts are disputed by the parties but the record contains video evidence depicting such facts, the court should view those facts "in the light depicted by the videotape").

[4] The parties dispute whether the vehicle came to a stop in the traveled portion of the interstate. Docs. 19-2 at 2, 23-1 at 1. Wheelock, citing body camera evidence of Officer Chang, states the vehicle was parked on the shoulder of the interstate. Indeed, the video evidence shows that the vehicle, while angled toward the roadway, did not cross the far white line.

[5] Wheelock argues that this is based on inadmissible double hearsay, as the communications to law enforcement were based on statements from an eyewitness. Docs. 19-2 at 2, 23-1 at 1-2.

2

told to search the area for a red Chevy Suburban with Iowa license plate 1MORCST. This vehicle had purportedly picked up the female from the interstate and left the scene. Docs. 19-2 at 2, 23-1 at 2.

Nitzschke learned that both the abandoned vehicle and the red Suburban returned to the address of 4307 Lincoln Way in Sioux City, Iowa. *Id.* Nitzschke drove to that address and observed a red Chevy Suburban with the matching plate in the open attached garage. *Id.* Nitzschke requested another officer and Luesebrink arrived a few seconds later. Shortly after Luesebrink's arrival, an individual, later identified as Douglas Wheelock, walked through the open garage and met the officers in the driveway.[6] Docs. 18-2 at 3, 23-1 at 2. Luesebrink and Nitzschke asked Wheelock a few questions, including where Wheelock had been that evening. Docs. 18-2 at 3, 23-1 at 2. Wheelock stated "nowhere" and that he was going to drop off his vehicle for service tomorrow. *Id.* When asked where he had been and who he had picked up, Wheelock responded "I have been here." Docs. 17-1 at 3, 22-1 at 5-6. Luesebrink asked Wheelock if the hood of the Suburban would feel warm if he were to touch it and Wheelock stated "it is warm." Docs. 19-2 at 3, 23-1 at 2-3.

The parties dispute whether Wheelock admitted to picking up his wife but agree that he told officers she was asleep in response to their question about the female he had picked up. Docs. 10-2 at 3, 23-1 at 3; Docs. 17-1 at 3, 22-1 at 6. He also stated he had been running errands. *Id.* Wheelock confirmed his wife, Marilyn Wheelock, was in the

---

Luesebrink and Woodbury County include a detailed description of the eyewitness' account in their statement of material facts, which Wheelock argues should not be considered because it is undated. *See* Docs. 17-1 at 1-2, 22-1 at 1-3. I do not find the particular details to be necessary as all parties agree law enforcement responded to reports of a reckless driver who had been observed getting into a red Suburban with Iowa plate number 1MORCST and both the Suburban and abandoned vehicle returned to the address 4307 Lincoln Way in Sioux City, Iowa.

[6] The parties dispute whether Wheelock staggered, had watery and bloodshot eyes and slurred speech. Docs. 17-1 at 2, 22-1 at 5. They agree Wheelock admitted to having two glasses of wine that evening. Docs. 17-1 at 3, 22-1 at 6.

3

house.  She was positively identified as the driver of the vehicle that had been abandoned and the registered owner of that vehicle.  Docs. 19-2 at 4, 23-1 at 3.

Nitzschke stated "we're going to have to go talk to Marilyn, ok?"[7]  Wheelock began walking to the garage and said he would bring her to the front door.  Nitzschke and Luesebrink followed.  Prior to entering the garage, Nitzschke asked Wheelock if there were any weapons in the house, to which Wheelock responded "no."  Nitzschke then asked Wheelock if he would mind if one them went in with him to which Wheelock said "yes."  *Id.*  Nitzschke clarified "you do mind?" and Wheelock confirmed he did. *Id.*  Luesebrink and Nitzschke continued following Wheelock into the garage.  At the house entry door, Luesebrink asked if he would mind leaving the door open and they would stand outside to which Wheelock responded "sure, she's going to come to the front door though."  Wheelock then went inside.  *Id.*  He returned to the garage entrance door and told officers "she's not well and doesn't want to talk to you."  *Id.*  Luesebrink responded, "that's not really an option, we have to talk to her."  Luesebrink offered to come in to speak to her if she did not want to get out of bed to which Wheelock responded "no."  Luesebrink then asked if he was going to be difficult in this investigation and stated "we could go a different route with this too."  Wheelock said "okay, I guess you'll have to have a warrant then."  Nitzschke then stated, "we both know that she's in there, correct?  Because you just told us she's in there."  Nitzschke then added:

> Right now it could definitely be articulated that you are interfering with official acts, okay?  So like he said, we could go one or two ways.  Alright, understand that whatever's going on tonight we're between a rock and a hard place.  However, we're all grown individuals.  We've made decisions and we need to own our decisions, okay?  So this can go one or two ways . . .  this can be turned into a whole ordeal we'll go get a warrant to enter your house and get her, we'll arrest you on interference, or we can just own up to our actions do our job have her come out to the door and deal with

---

[7] The parties dispute whether the officers voiced a concern that they wanted to make sure Marilyn was okay.  Wheelock denies that they asked to speak with her to make sure she was okay.  The video evidence does not reflect that officers asked about Marilyn's well-being in any way prior to entering the house.

what she did, okay?  Honestly, at the end of the day, we just want to have a conversation with her.  'Cause we had a report that her car is somewhere and we want to make sure that why it's abandoned out there we don't know.  And that this car came and picked her up and drove off, okay?  So with that being said do you still want us to go write a warrant to get in the house?

Wheelock responded "yep" and Nitzschke said "okay."  Nitzschke then stated "and you're still, you don't want to cooperate with us[8] after you admitted she's in there?[9]" Nitzschke said "okay" and asked Luesebrink if he just wanted to stay in touch with him, referring to Wheelock.  At this point Wheelock stated "okay, I'm going to shut the door.  You can stay out here as long as you want."  Luesebrink responded "nope, nope, you can come stand out here" and reached towards Wheelock who was retreating into house.  Luesebrink then stepped into the house and Wheelock responded "Sir!" and Luesebrink stated "c'mon relax" as he continued reaching for Wheelock.  Wheelock faced Luesebrink and backing away stated "Listen to me.  I am going to stay in here.  You have no right to be in my house or pull me out of my house."  Using both hands he pointed to the door stating, "Out there."  Luesebrink followed him further into the house and said "no you can come stand out here until we figure this out."

Luesebrink then grabbed Wheelock and directed him back towards the garage.  Wheelock yelled about having a bad shoulder and having just had shoulder surgery.  He stated he was going to go get his cell phone and call his attorney because they[10] were in his house without a warrant.  Nitzschke responded "well you're not willing to cooperate, okay?  You know she's in here."  At this point, Nitzschke asked Luesebrink if he's fine going with interference to which Luesebrink said yes.  Docs. 18-1 at 5; 20-2 at 4.

---

[8] At this point, Wheelock shakes his head "no."

[9] At this point, Wheelock nods his head "yes."

[10] By this point, Nitzschke had also entered the residence.

Wheelock was arrested for interference with official acts.[11]  The charge was subsequently dismissed by the Woodbury County Attorney.  Docs. 20-3 at 6; 24-1 at 6.[12]

### III.    SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "the substantive law will identify which facts are material."  *Id.*  Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not.  *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question."  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).  Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475

---

[11] The parties agree that Nitzschke was the one to make the formal arrest, but Wheelock contends Luesebrink participated in and assisted in the arrest.  Docs. 20-3 at 6; 24-1 at 6-7.  Roos did not witness the circumstances of the arrest.  Docs. 19-2 at 7, 23-1 at 7.  After the arrest, Roos entered the garage to assist Luesebrink and Nitzschke in escorting Wheelock to the driveway.  He subsequently entered the home to speak with Marilyn Wheelock.  *Id.*

[12] I do not find the aftermath of the arrest to be particularly relevant as Wheelock alleges a Fourth Amendment violation based on the warrantless entry into his home and arrest.

6

U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). On cross motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998).

## IV.    ANALYSIS

### A.    Defendants' Motions

#### 1.    Section 1983 Claim

Wheelock's claim is based on an alleged violation of his Fourth Amendment rights from the entry/search of his residence without a warrant and arrest without reasonable suspicion or probable cause. Both sets of defendants argue there was no constitutional violation and even if there was, it was not clearly established in the law such that they are entitled to qualified immunity.

Qualified immunity shields a government official from individual liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Davis v. Hall*, 375 F.3d 703, 711-12 (8th Cir. 2004). "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis*, 375 F.3d at 711-12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). To determine whether defendants are entitled to qualified immunity, courts ask (1) whether the facts viewed in the light most favorable to plaintiff establish a violation of a constitutional right and (2) whether that constitutional right was clearly established as of the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity. *See Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 791 (8th Cir. 2013).

8

First, I will address whether the facts viewed in the light most favorable to Wheelock establish a violation of a constitutional right. Luesebrink argues he did not search Wheelock's home and had consent to wait in the garage. After Wheelock's arrest, Luesebrink states he entered the home and stood in the hallway while another officer interviewed Marilyn Wheelock and did not perform a search. As to an unlawful seizure, Luesebrink states he did not arrest Wheelock, but admits he was involved in what he characterizes as a "temporary detention" in the driveway. Doc. 17-2 at 7. He reasons that during this "temporary detention," Wheelock was hesitant and evasive and lied to officers. He argues he entered Wheelock's home to handcuff and detain him "a second time" because the investigation was still underway. He explains the same circumstances that gave rise to reasonable suspicion at the outset, combined with what he characterizes as a "sudden change" in Wheelock's demeanor and disobedience to repeated commands, enhanced his level of suspicion. He claims he did not know what Wheelock intended to do when he ignored officers' instructions to return to the driveway and attempted to retreat into his residence and that Wheelock's seizure was reasonable to protect officer safety. As such, he argues there was no constitutional violation.

Nitzschke asserts he had at least arguable reasonable suspicion to detain Wheelock to further the investigation and that it was not until Wheelock attempted to end the detention by walking away and physically resisting Luesebrink's attempts to stop him that Wheelock was arrested for interference with official acts. Doc. 19-1 at 11. Roos argues he did not detain or arrest anyone and his mere presence in the Wheelock residence is insufficient to tie him in with the detention and arrest of Wheelock. He notes he entered the residence only after Wheelock's arrest to verify Marilyn Wheelock's well-being. All defendants argue the warrantless entry was justified under the community caretaker function because they were trying to locate the woman from the interstate, check on her well-being, determine whether she had been injured and make sure she was safe.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation marks omitted). "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo v. United States*, 533 U.S. 27, 31 (2001). "The Fourth Amendment generally prohibits police from entering a home without a warrant unless the circumstances fit an established exception to the warrant requirement." *United States v. Varner*, 481 F.3d 569, 571 (8th Cir. 2007) (quotation marks omitted). *See also Payton v. New York*, 445 U.S. 573, 590 (1980) ("the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."). The area "immediately surrounding and associated with the home," referred to as the "curtilage" is "part of the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 569 U.S. 1, 6 (2013).

Defendants have identified three possible exigencies or exceptions to entering[13] Wheelock's home without a warrant – consent, community caretaker and officer safety. With regard to consent, officers may enter a residence if they "receive voluntary consent to enter from a person possessing authority over the residence." *United States v. Faler*, 832 F.3d 849, 853 (8th Cir. 2016). "Voluntary consent may be express or implied." *Id.* Implied consent may be based on a person's "words, gestures, or other conduct." *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009). Whether consent to enter was

---

[13] While defendants frame their argument in terms of whether there was a lawful "search" of the home and "seizure" of Wheelock, the issue is whether their *entry* into the home violated the Fourth Amendment, as neither a search nor a seizure occurred until after this entry. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) ("The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects.").

voluntarily given "is a question of fact to be determined from all the circumstances, and the government bears the burden of showing that the consent was freely given." *United States v. Hampton*, 260 F.3d 832, 835 (8th Cir. 2001). The ultimate question is whether "a reasonable officer would believe consent was given." *Pena-Ponce*, 588 F.3d at 584.

Luesebrink's body camera clearly shows that as Wheelock was entering his open garage, Nitzschke asked "do you mind if one of us go in with you?" to which Wheelock replied "yes." Nitzschke confirmed, "you do mind?" and Wheelock confirmed his answer. At this point, Nitzschke and Luesebrink continue walking into the garage behind Wheelock asking him for his name again. At the door to the house, Luesebrink asked Wheelock "will you just leave the door open, please, and we'll stand right here?" Wheelock responded, "sure, she's going to come to the front door though." *See* Plaintiff's Exhibit 1; Luesebrink Body Camera Video at 2:24-2:38. Even if it could be argued that the officers reasonably believed they had implied consent to wait in the garage,[14] it is undisputed that Wheelock expressly denied consent to enter the residence. Therefore, the consent exception to the warrant requirement does not apply.

Defendants next raise the exception of "community caretaker" but acknowledge it is not clearly defined. In *Caniglia v. Strom*, 593 U.S. 194 (2021), the Supreme Court considered whether the community caretaking function of police officers "creates a standalone doctrine that justifies warrantless searches and seizures in the home." *Caniglia*, 593 U.S. at 196. In that case, the petitioner's wife spent the night in a hotel after he expressed suicidal thoughts. *Id*. The next morning, she could not reach him and called the police to request a welfare check. The petitioner spoke with police on the porch of his home, stated he was not suicidal but agreed to go to the hospital for a

---

[14] This would be quite a stretch, as it is clearly established that an attached garage is considered part of the curtilage of a home and is a constitutionally-protected space requiring either a warrant or an exception to the warrant requirement to enter. *See Jardines*, 569 U.S. at 6 (explaining the area "immediately surrounding and associated with the home – what our cases call the curtilage – is part of the home itself for Fourth Amendment purposes."). Wheelock expressly denied consent to enter that protected space.

psychiatric evaluation if the police promised not to confiscate his firearms. *Id.* at 196-97. After the petitioner left, the officers entered the home and seized two firearms. The lower courts concluded the decision to remove the firearms from the premises fell within the community caretaking exception to the warrant requirement. *Id.* at 197.

The Supreme Court, however, found that the First Circuit's "community caretaking" rule went "beyond anything this Court has recognized." *Id.* at 198. It declined to extend the holding in *Cady v. Dombrowski*, 413 U.S. 433 (1973) that a warrantless search of an impounded vehicle for an unsecured firearm did not violate the Fourth Amendment, reasoning that the home was a "constitutional difference" that *Cady* had repeatedly stressed. *Id.* at 199. The Court noted that the reference to "community caretaking" in that *Cady* was merely a "recognition that police officers perform many civic tasks in modern society" and in the proper context was "not an open-ended license to perform them anywhere." *Id.* It vacated the judgment and remanded for further proceedings. Based on *Caniglia*, there is no recognized community caretaking exception to the warrant requirement, at least as it applies to the home. *See id.* ("What is reasonable for vehicles is different from what is reasonable for homes."); *see also Graham v. Barnette*, 5 F.4th 872, 881 (8th Cir. 2021) (discussing that post-*Caniglia*, the recognition of a community caretaker exception to the warrant requirement was "untenable insofar as [*Caniglia*] explained that 'community caretaking' was not a 'standalone doctrine' that could justify warrantless entry into the home.").

The closest recognized exigency is the need to "render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Kentucky v. King*, 563 U.S. 452, 460 (2011). This exigency can justify a warrantless entry if officers have an "objectively reasonable basis for believing . . . that a person within the house is in need of immediate aid . . . ." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam). Here, there is no evidence that the officers had any objective reason to believe that Marilyn Wheelock was injured or needed protection from imminent injury. The

12

communications from dispatch did not mention any possible injury and Wheelock stated that his wife was in the house sleeping. Indeed, just prior to Roos entering the residence to speak to Marilyn after Wheelock's arrest, Wheelock confirmed that she was fine. *See* Plaintiff's Exhibit 2; Chang Body Camera Video at 19:58. Any belief that Marilyn Wheelock needed emergency assistance would be based on speculation, and thus unreasonable. This exigency does not apply.

Finally, the defendants rely on the officer safety exception to the warrant requirement. *See United States v. Kuenstler*, 325 F.3d 1015, 1021 (8th Cir. 2003) ("Exigent circumstances exist where law enforcement officers have a legitimate concern for the safety of themselves or others." (quotation omitted)). Before entering the garage, Nitzschke asked Wheelock if he had any weapons in the house, to which Wheelock responded, "no." Even if he had responded "yes," "[s]omeone having a gun in their home does not create an exigency on its own." *United States v. Williams*, 77 F.4th 1197, 1199 (8th Cir. 2023) (citing *United States v. Quarterman*, 877 F.3d 794, 798 (8th Cir. 2017)). Luesebrink argues he "did not know what Wheelock intended to do when he ignored officers' instructions to return to the driveway and attempted to retreat into the residence." Doc. 17-2 at 8. However, he cites no facts from which a reasonable police officer would have believed that Wheelock presented a danger to officers or others. The events of this case come nowhere close to circumstances in which courts have found a warrantless entry reasonable based on a legitimate concern for the safety of officers or others. *See, e.g.*, *United States v. Henderson*, 553 F.3d 1163, 1164-65 (8th Cir. 2009) (warrantless search justified where officers had information that suspect was armed with a gun and his wife in a bedroom after threatening to kill a man whom he believed had been with her); *United States v. Uscango-Ramirez*, 475 F.3d 1024, 1029 (8th Cir. 2007) (concluding warrantless entry into the home was reasonable to ensure defendant did not seriously injure or kill himself because officers had reliable information that defendant

had locked himself in a bedroom with a gun and was very upset over the disintegration of his marriage). This exigency does not apply.

To the extent defendants assert that the warrantless entry was necessary to continue a purported temporary detention of Wheelock to further their investigation, that is not a recognized exigency or exception to justify a warrantless entry into a home or its curtilage. Indeed, the Supreme Court has examined an investigation under similar circumstances and found no justification for a warrantless home entry. In *Welsh*, a witness observed a car changing speeds and veering from side to side before swerving off the road and coming to a stop in an open field. *Welsh v. Washington*, 466 U.S. 740, 742 (1984). The driver got out of his vehicle and walked home. *Id.* Police responded to the scene, were told by the witness that the driver was either very inebriated or very sick and went to the residence of the registered owner of the vehicle. *Id.* The petitioner's stepdaughter answered the door and the police entered the house.[15] *Id.* at 743. They arrested the petitioner for driving or operating a vehicle while under the influence. *Id.*

The State attempted to justify the arrest based on the hot-pursuit doctrine, the threat to public safety and the need to preserve evidence of the petitioner's blood-alcohol level. *Id.* at 753. The Court rejected the first two bases because (1) there "was no immediate or continuous pursuit of the petitioner from the scene of a crime" and (2) "because the petitioner had already arrived home, and had abandoned his car at the scene of the accident, there was little remaining threat to the public safety." *Id.* As to the third justification, the Court noted that the potential offense was a noncriminal, civil forfeiture offense for which no imprisonment was possible and a warrantless home arrest could not be upheld simply because blood-alcohol levels may have dissipated while the police obtained a warrant. *Id.* at 745. The Court held that the warrantless entry into the petitioner's home to arrest him for a civil traffic offense was prohibited by the Fourth Amendment. *Id.*

---

[15] The Court assumed there was no consent to enter. *See Welsh*, 466 U.S. at 743, n.1.

14

More recently, the Court has considered whether to apply a categorical warrant exception when a suspected misdemeanant fled from police into his home. *See Lange v. California*, 594 U.S. 295 (2021). In *Lange*, law enforcement observed a driver who was blasting music with the windows down and honking his horn. *Lange*, 594 U.S. at 299. The officer signaled for Lange to pull over but Lange, only about a four-second drive from his home, continued into his driveway and entered his attached garage. *Id.* The officer followed Lange into the garage and began questioning him, during which he observed signs of intoxication and administered field sobriety tests. *Id.* This led to a blood test and charges of misdemeanor driving under the influence of alcohol and a low level noise infraction. *Id.* Lange moved to suppress all evidence obtained after the officer entered his garage. *Id.* The Court declined to recognize a categorical rule of flight as an exigency for a warrantless home entry in a misdemeanor case. *Id.* at 308. It reasoned:

> Our Fourth Amendment precedents thus point toward assessing case by case the exigencies arising from misdemeanants' flight. That approach will in many, if not most, cases allow a warrantless home home entry. When the totality of circumstances shows an emergency – such as imminent harm to others, a threat to the officer himself, destruction of evidence, or escape from the home – the police may act without waiting. And those circumstances, as described just above, include the flight itself. But the need to pursue a misdemeanant does not trigger a categorical rule allowing home entry, even absent a law enforcement emergency. When the nature of the crime, the nature of the flight, and surrounding facts present no such exigency, officer must respect the sanctity of the home – which means that they must get a warrant.

*Id.* at 308-09.

Here, the officers were investigating Marilyn Wheelock. To the extent they were investigating the plaintiff's involvement, that investigation essentially concluded in the driveway when officers told Wheelock they needed to speak to his wife and ended any purported detention by allowing him to enter his home. They do not assert probable cause to arrest Wheelock at the time he retreated into his home. Indeed, they only

15

arrested him (for interference with official acts) based on his resistance to officers' commands to come back outside[16] and to Luesebrink physically grabbing him once he had entered Wheelock's home. Luesebrink's response of entering Wheelock's home without a warrant to "handcuff and detain Wheelock for a second time" goes beyond reasonableness. If, under *Welsh* and *Lange*, officers had no basis to enter a home without a warrant to investigate the alleged suspect himself, they certainly had no basis to enter Wheelock's home without a warrant to force him to participate in their investigation.

Defendants have failed to demonstrate any facts from which a reasonable jury could conclude that an exigency or exception to the warrant requirement applied to any of the warrantless entries. Based on the analysis above, there was a constitutional violation when viewing the facts in the light most favorable to Wheelock. *See Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (explaining the initial inquiry as "whether the facts alleged or shown, construed in the light most favorable to [the nonmoving party], establish a violation of a constitutional … right"). This applies to each of the individual defendants as none are able to establish a recognized exigency or exception to the warrant requirement to allow their warrantless entry into the house and/or curtilage. Therefore, whether defendants are entitled to qualified immunity depends on whether the constitutional right was clearly established as of the time of the violation.

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Barton v. Taber*, 820 F.3d 958, 966 (8th Cir. 2016) (quoting *Meehan v.*

---

[16] Notably, officers made these commands after telling Wheelock they could proceed one of two ways – through his cooperation or obtaining a warrant. Wheelock responded he could get a warrant. Defendants' assertion that there was substantial showing of authority such that a reasonable person would have believed he was not free to leave is absurd given that (1) they allowed Wheelock to enter his home unaccompanied and (2) they acknowledged they could proceed only through Wheelock's cooperation or a warrant. Even if an investigatory detention was an exception to the warrant requirement, the facts do not support that Wheelock was "detained" once he was in his home, given the officers' actions and statements.

*Thompson*, 763 F.3d 936, 940 (8th Cir. 2014)). "Because qualified immunity protects officials who make bad guesses in gray areas, it gives them breathing room to make reasonable but mistaken judgments." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018) (internal citation omitted). "What is 'clearly established law should not be defined at a high level of generality . . . [but] must be particularized to the facts of the case.'" *Frederick v. Motsinger*, 873 F.3d 641, 647 (8th Cir. 2017) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). "The pertinent inquiry is whether the state of the law at the time gave the official 'fair warning' that such conduct was unlawful in the situation he confronted." *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As applied here, the appropriate inquiry is whether a reasonable officer would have understood that entering a home without a warrant in order to detain an individual to continue their investigation of a possibly impaired driver violates the homeowner's constitutional rights.

All of the cases discussed above on this issue were decided prior to May 30, 2023. The recognized exceptions and exigencies in which law enforcement may enter a home without a warrant are clearly established. There is no exception based on arguable reasonable suspicion or arguable probable cause to detain and arrest an individual to further an investigation, particularly one involving a separate individual. Warrantless entry into a home or its curtilage outside of any recognized exception or exigency has been clearly established for a significant time and a reasonable officer would understand it was unlawful to enter a home or its curtilage without a warrant, absent consent or exigent circumstances. *Smith v. Kansas City, Missouri Police Dept.*, 586 F.3d 576, 581 (8th Cir. 2009). Defendants are not entitled to summary judgment based on qualified immunity.

## 2. *False Arrest*

Luesebrink argues he cannot be liable for false arrest because Nitzschke was the one to arrest Wheelock. He admits to handcuffing Wheelock, stating he did so only when Wheelock defied their instructions to return to the driveway and that he had an objectively reasonable belief that immediate action was required to preserve officer safety based on Wheelock's purported change in demeanor and refusal to obey orders. He states "[b]ased on that belief and Plaintiff's refusal to obey, the officers had the right to enter the home and handcuff plaintiff while discussing remaining options for confirming that Plaintiff's wife was safe." Doc. 17-2 at 12-13. Wheelock responds that Luesebrink arrested him without a warrant in Wheelock's home and without probable cause. He cites the depositions of Luesebrink, the County representative and Nitzschke to argue that Luesebrink either arrested or assisted in the arrest of Wheelock.

"The essential elements of the tort of false arrest are (1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint." *Children v. Burton*, 331 N.W.2d 673, 678-79 (Iowa 1983). Once a plaintiff shows there was a warrantless arrest, "the burden of proof shifts to the defendant to show justification for the arrest." *Id.* at 679. "If the officer acts in good faith and with reasonable belief that a crime has been committed and the person arrested committed it, his actions are justified and liability does not attach." *Id.* at 680.

It is immaterial whether Luesebrink was the one to formally arrest Wheelock, as he admits to being the one who handcuffed him, which qualifies as restraint against one's will. *See Dunn v. Does 1-22*, 116 F.4th 737, 749 (8th Cir. 2024) (acknowledging that Section 1983 liability extends to all defendants who "personally participated" in the plaintiff's arrest). Luesebrink is not entitled to summary judgment on this basis. Nor is he entitled to summary judgment based on any alleged lawfulness of the detention or restraint because, as discussed above, Luesebrink entered the home without a warrant, consent or exigent circumstances. Given that initial unlawful entry, the subsequent

18

detention of Wheelock for interference with official acts is also unjustifiable.  *See Payton v. New York*, 445 U.S. 573, 590 (1980) ("In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.").  Luesebrink is not entitled to judgment as a matter of law on this claim.

### 3. *Abuse of Process*

Luesebrink argues he cannot be liable for abuse of process because he did not arrest Wheelock or charge him with interference with official acts.  Even if any of Luesebrink's actions could be considered use of the legal process, he argues there is no evidence that he did so for an impermissible or illegal purpose.  He contends the six-minute "detention" in Wheelock's driveway was in the context of a welfare check based on the information they had received of a woman who had been picked up on the interstate.  He then states he subsequently assisted in handcuffing Wheelock after having given multiple orders to remain in the driveway, only to observe Wheelock ignore him and attempt to go back in his house.  At that point, Luesebrink argues that he had an objectively reasonable belief that immediate action was required to preserve officer safety.  Wheelock argues that an arrest constitutes the use of a legal process and that Luesebrink arrested Wheelock for an illegal purpose based on Wheelock's declining to cooperate further with the investigation of his wife.

Abuse of process is "the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed."  *Fuller v. Loc. Union No. 106 of United Brotherhood of Carpenters & Joiners*, 567 N.W.2d 419, 421 (Iowa 1997) (quoting *Palmer v. Tandem Mgmt. Servs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993)).  "The three elements of an abuse-of-process claim are: (1) the use of a legal process; (2) its use in an improper or unauthorized manner; and (3) the plaintiff suffered

damages as a result of the abuse." *Id.* at 421-22. "Normally the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself." *Id.*

It is undisputed that Luesebrink was not the one to formally arrest or charge Wheelock, but that he assisted in the arrest by handcuffing Wheelock.[17] It is unclear under Iowa law whether a warrantless arrest, or assist in the arrest, would constitute the use of a legal process. Some courts make a distinction as to whether the arrest involved the judicial process. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1414, n.9 (D.C. Cir. 1984) ("warrantless arrests and detentions effectuated entirely *independent* of the judicial process could not support an abuse of process tort claim.") (emphasis in original); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 524 (S.D.N.Y. 2015) ("Warrantless arrest cannot form the basis for [malicious abuse of process.]"). In *Fuller*, the Iowa Supreme Court discussed what constitutes "legal process" and noted that some commentators state that it requires judicial process, or must emanate from or rest upon court authority. *Fuller*, 567 N.W.2d at 422 (citing 1 Am.Jur.2d *Abuse of Process* § 2, at 411 (1994) and W. Page Keaton et al., *Prosser and Keaton on the Law of Torts* § 121, at 898 (5th ed. 1984)). The Court also discussed case law, including a Texas case that provided the arrest and subsequent detention of plaintiffs was an inadequate factual basis for an abuse-of-process claim under Texas law when no formal criminal proceedings were instituted against them. *Id.* (citing *Kjellvander v. Citicorp*, 156 F.R.D. 138, 142 (S.D. Tex. 1994)). One Iowa federal court has concluded that an arrest constitutes the

---

[17] Wheelock states that Luesebrink "either arrested or assisted in the arrest of Wheelock." Doc. 22-2 at 6. He cites the depositions of Luesebrink, County representative Don Armstrong and Nitzschke. Luesebrink testified that Wheelock was arrested by Nitzschke and that he assisted Nitzschke in the arrest. Doc. 22-3 at 22. Nitzschke testified that he informed Wheelock he was being arrested for interference with official acts and that he and Luesebrink both placed Wheelock in handcuffs. He could not recall whose handcuffs ended up on Wheelock. *Id.* at 41. Armstrong testified he reviewed Luesebrink's body camera footage and testified Luesebrink participated in Wheelock's arrest.

"use of a legal process," citing *Fuller* but providing no further explanation. *See Webster v. Westlake*, 587 F. Supp. 3d 846, 863 (S.D. Iowa 2021).

Based on the circumstances of this case, in which Luesebrink was involved in Wheelock's arrest only to the extent of handcuffing him or restraining him while Nitzschke handcuffed him, and applicable case law that tends to require something more than mere detention, I find that Luesebrink is entitled to summary judgment on Wheelock's abuse of process claim. It is undisputed that Luesebrink was not the one to formally arrest Wheelock but assisted in the arrest only to the extent of handcuffing or restraining Wheelock. This essentially amounts to a physical restraint rather than any use of legal process. As such, Luesebrink is entitled to summary judgment on Wheelock's abuse of process claim.

### 4. *Respondeat Superior*

The County argues it is entitled to summary judgment on this claim because Wheelock fails to allege any facts from which one could draw an inference that the challenged conduct was the result of an unconstitutional policy or custom. Rather, he is alleging that Woodbury County is liable for the actions of its employee under respondeat superior.

Wheelock relies on Iowa Code § 670.2, the Iowa Municipal Tort Claims Act (IMTCA) to argue that the county is liable for torts "of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." He notes Luesebrink was employed by the County at all relevant times and acting within the scope of his employment and duties as a peace officer when he arrested Wheelock and argues the County's training contributed to Luesebrink's belief that it was appropriate to charge Wheelock with interference with official acts.

Iowa Code § 670.2 applies to Wheelock's state law tort claims. *See* Iowa Code § 670.1(4) (defining tort to mean "every civil wrong which results in wrongful death or

21

injury to person or injury to property or injury to personal or property rights and includes but is not restricted to actions based upon negligence; error or omission; nuisance; breach of duty, whether statutory or other duty or denial or impairment of any right under any constitutional provision, statute or rule of law."); *Id.* § 670.1(2) (including county in the definition of municipality). Indeed, the remedy against a municipality provided by section 670.2 is exclusive of any other civil action or proceeding. *Id.* § 670.4(2). However, the IMTCA does not apply to Wheelock's § 1983 claim under Count I. *See Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").

There is no dispute that Woodbury County is a municipality, that Luesebrink was an employee of that municipality at all relevant times and that he was acting within the scope of his employment or duties. Under Iowa Code § 670.2, the County is subject to liability on Wheelock's Iowa law claims unless the IMTCA otherwise provides an exception. The exceptions are found in § 670.4. The County does not argue that any of these exceptions apply. The County is not entitled to summary judgment on Wheelock's respondeat superior claim as it applies to Count II.

For the reasons stated herein, defendants' motions for summary judgment will be denied on Counts I, II and IV and granted on Count III.

## B.    *Wheelock's Motion*

Wheelock seeks summary judgment on liability as to each of his claims. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." The "essential elements of a § 1983 claim are: (1) violation of a constitutional right, (2) committed by

22

a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385 (8th Cir. 2007). "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017). Wheelock argues defendants all entered his garage and/or home without a warrant and in the absence of any exigent circumstances in violation of the Fourth Amendment.

As to Counts I and II, Luesebrink attempts to draw a distinction between arresting and detaining Wheelock, arguing that because Nitzschke was the one to formally arrest Wheelock, only he can be liable on Wheelock's claims. As to Count I specifically, Luesebrink argues he had consent to wait in the garage while Wheelock went to get his wife and that he later had consent to enter the house to accompany Wheelock while he retrieved his cell phone. He does not address the first entry into the house. *See* Doc. 20-1 at 7-8. On the respondeat superior claim, Woodbury County argues that it cannot be liable for the Iowa tort claims if Luesebrink is not liable. Nitzschke and Roos rely on the same investigatory detention theory discussed above to justify their actions.

The relevant facts are not in dispute. Even when viewing the facts in the light most favorable to defendants, I find that a reasonable jury could not conclude the warrantless entry was justified under an investigatory detention theory, as that is not a recognized exigency or exception to the warrant requirement. Defendants have cited no other evidence from which a reasonable jury could conclude, under current Fourth Amendment law, that they lawfully entered Wheelock's home without a warrant. In short, the undisputed facts establish a Fourth Amendment violation as a matter of law, as to each defendant, and do not support any applicable exigency or exception to the warrant requirement. Therefore, I find that Wheelock is entitled to summary judgment regarding

23

the liability aspect of his § 1983 claim for a Fourth Amendment violation as to Luesebrink, Nitzschke and Roos.[18]

With regard to the Count II, the false arrest claim against Luesebrink, Luesebrink relies on the fact that he detained Wheelock but was not the one to formally arrest him to argue that the claim fails. Because it is Wheelock's motion, he has the burden of proving there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. As noted above, the elements consist of detention or restraint against one's will and the unlawfulness of the detention or restraint. *Children*, 331 N.W.2d at 678-79. As such, formal arrest by the defendant is not required. The unlawfulness of the detention or restraint is also established on the undisputed facts based on Luesebrink entering Wheelock's home without a warrant and without an applicable exigency or exception to the warrant requirement. Luesebrink puts forward no other defense to this claim. As such, Wheelock is entitled to summary judgment on his claim of false arrest against Luesebrink.

Finally, Wheelock is also entitled to summary judgment on the respondeat superior claim against the County based on the false arrest claim against Luesebrink. As noted above, there is no dispute that Woodbury County is a municipality, that Luesebrink was an employee of that municipality at all relevant times and that he was acting within the scope of his employment or duties. The County has put forward no argument as to why Iowa Code § 670.2 should not apply to the Iowa claims in the event Luesebrink is found liable. Given Luesebrink's liability on Count II, the County is also liable pursuant to Iowa Code § 670.2.

---

[18] As explained above, I find that defendants are not entitled to qualified immunity as the law was clearly established at the time of the violation that the conduct in this case would violate the Fourth Amendment.

## V.    CONTINUANCE OF TRIAL

As noted above, this case is currently set for trial beginning February 3, 2025. Unfortunately, due to irreconcilable conflicts with my criminal trial docket, I am not available to preside over this trial as currently scheduled.[19]   As such, trial must be continued.

## VI.    CONCLUSION

For the reasons stated herein:

1.    Plaintiff Douglas Wheelock's motion (Doc. 18) for partial summary judgment is **granted** as to liability with regard to Counts I, II and IV.

2.    The motion (Doc. 17) for summary judgment filed by defendants Daniel Luesebrink and Woodbury County, Iowa, is **granted in part and denied in part**.  It is **granted** as to Count III.  It is **denied** in all other aspects.

3.    The motion (Doc. 19) for summary judgment filed by defendants Andrew Nitzschke and Connor Roos is **denied**.

4.    This case will proceed to trial on the issue of damages as to Counts I, II and IV.  However, the trial of this matter, currently set to begin February 3, 2025, is hereby **continued**, as is the final pretrial conference currently set for January 21, 2025. My chambers will consult with counsel concerning a new date for this trial.

---

[19] This is an unfortunate, recurring situation that results from this district's heavy criminal caseload, the limited number of United States District Judges available to preside over felony criminal trials and the requirements of the Speedy Trial Act, 18 U.S.C. § 3161, et seq.  The parties are reminded of their opportunity to consent to trial, disposition and judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(3).

25

**IT IS SO ORDERED** this 17th day of December, 2024.

_____

Leonard T. Strand
United States District Judge